Opinion issued May 28, 2009














 
 
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00525-CV
 
 
FRANCISCO CORPUS AND JUANA MARIA CASTILLO, Appellants
 
V.
 
PETE ARRIAGA AND JESUSA DELAO, Appellees
 

 
 
On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 2004-CV-135,959
 

 
   
O P I N I O N
          This is an appeal from a bench trial concerning a fraudulent transfer of real
property under The Uniform Fraudulent Transfer Act (TUFTA). See Tex. Bus. &
Com. Code Ann. §§ 24.001–.013 (Vernon 2002). Appellants, Francisco Corpus
(Corpus) and Juana Maria Castillo (Castillo), appeal from a final judgment in favor of
appellees, Pete Arriaga (Pete) and Jesusa Delao (Delao). Corpus and Castillo present
15 issues on appeal challenging the legal and factual sufficiency of the evidence, and
asserting the trial court erred by failing to award attorney’s fees to Corpus and Castillo
and failing to levy execution on the real property. We conclude that the real property
transfers were fraudulent under section 24.006(a) of TUFTA. We reverse the
judgment of the trial court and render judgment that the real property transfers were
fraudulent under section 24.006(a) of TUFTA. We remand for consideration of the
request for attorney’s fees and the request for levied execution on the real property . 
Background
          In 1994, Modesto and Felicita Arriaga (the Arriagas) purchased several
properties from Wessendorff Development Company (Wessendorff). The Arriagas
executed a promissory note in the amount of $47,409.30 in consideration for
purchasing the properties. 
          The Arriagas then entered into a business agreement with Corpus and Castillo. 
Corpus and Castillo were to build a dance hall on one of the properties purchased by
the Arriagas from Wessendorff. However, disputes arose between the parties, and
construction of the dance hall ceased.
           In 1999, Corpus and Castillo sued the Arriagas over the failed dance hall. 
Several months later, the Arriagas filed for bankruptcy, which stayed the lawsuit.
           In 2002, the Arriagas sold a portion of the Wessendorff properties. The
Arriagas used the proceeds from that sale to satisfy the note to Wessendorff, which
released its lien on the properties.



           In 2003, the Arriagas voluntarily dismissed their bankruptcy petition, and the
lawsuit resumed. See In re Arriaga, No. 1999-38705-H5-7 (Bankr. S.D. Tex. Sept. 15,
2003). On March 2, 2004, the trial court rendered a final judgment in favor of Corpus
and Castillo, awarding them $66,000 in actual damages, prejudgment interest at 10%
from May 1, 1997 through March 2, 2004, $16,979 for attorney’s fees plus $10,000
if the case was appealed, court costs, and postjudgment interest at 10%. See Corpus
v. Arriaga, No. 1999-CV-107,504 (268th Dist. Ct., Fort Bend County, Tex. Mar. 2,
2004). The Arriagas did not appeal. To date, the Arriagas have not made any
payments toward satisfying the judgment.
           In March 2004, just 15 days after the trial court rendered a final judgment
against them, the Arriagas transferred to their children, Pete and Delao, the remaining
properties that had been purchased from Wessendorff. The deeds were recorded in
Fort Bend County. Upon learning of the transfers, Corpus and Castillo initiated this
suit. In their petition, Corpus and Castillo alleged that the property transfers to Pete
and Delao were fraudulent under TUFTA. Corpus and Castillo sought remedies under
section 24.008 of TUFTA, including the right to levy execution on the transferred
properties. They also sought attorney’s fees pursuant to section 24.013. Pete and
Delao answered with a general denial and requested attorney’s fees.
           The case proceeded to a bench trial. Delao and Leticia Arriaga, Pete’s wife,
testified that the Arriagas made an oral agreement in 1994 that the properties belonged
jointly to the Arriagas, Pete, and Delao. They also testified that Delao and Pete made
monthly payments toward the Wessendorff note from 1994 through 2002, when the
Arriagas paid off the note. 
           The trial court rendered final judgment in favor of Pete and Delao. The trial
court awarded Pete and Delao $12,000 in attorney’s fees plus $7500 if the case was
appealed, costs of court, and postjudgment interest at 6%. The trial court also ordered
that the lis pendens filed in Fort Bend County against the transferred properties be
dissolved upon the conclusion of the appeals process. The trial court made the
following findings of fact and conclusions of law:
Findings of Fact
 
1.        The Court finds as a matter of fact that there is an agreement
entered into between the Defendant family members to
contribute funds to the purchase of the subject property, which
was adhered to by the Defendants. The agreement was entered
into prior to any judgment or claim that the Plaintiff could have
made in this case. The Defendants paid their share of the money
owed and the amount they paid was equivalent value because the
amount they paid was based upon the original purchase price of
the property.
 
2.        The Court finds as a matter of fact that there was no intent to
hinder, delay or defraud any creditor.
 
3.        The Court finds as a matter of fact that the Defendants were
purchasers for value of the subject real property.
 
4.        The Court finds that as a matter of fact, the agreement between
the Arriagas and the Defendants pre-existed the transaction
entered into by the Arriagas and the Plaintiffs, and that the
Arriaga agreement with the Defendants pre-dated the Arriaga
agreement with the Plaintiffs by a substantial period of time and
therefore there was no intent or belief by the Arriagas at the time
they conveyed the property to the Defendants that the Arriagas
would be incurring debts that were beyond their ability to pay as
they came due, or that their remaining assets were unreasonably
small in relation to the transaction they entered into with the
Plaintiffs.
 
5.        The Court finds that as a matter of fact, the Arriagas:
 
           a.      did not attempt to conceal the transaction,
 
           b.      did not retain control or possession of the property after the
agreement between the Arriagas and the Defendants was
entered into,
 
           c.      did not transfer the property after they had been sued by the
Plaintiffs, and
 
           d.      did not abscond.
 
. . . .
 
Conclusions of Law
 
1.        The agreement entered into between the Defendants and the
Arriagas is a valid and enforceable agreement.
 
2.        The Arriagas did not intend to defraud, hinder or delay the
Plaintiffs.
 
3.        The Arriagas received reasonably equivalent value, if not more,
than they were entitled to under the agreement with the
Defendants.
 
4.        The Arriagas did not enter into the agreement with the
Defendants for the acquisition of the subject property at a time
when they intended to, believed, or reasonably should have
believed that they would be entering into a subsequent agreement
that would make their remaining assets insufficient to satisfy the
newly incurred financial obligation.
 
5.        Defendants were purchasers for value of the subject real property
. . . .
 
Corpus and Castillo filed a motion for new trial, which the trial court denied. The
motion for new trial asserted that the oral agreement between the Arriagas, Pete, and
Delao did not constitute a transfer, which actually occurred on March 17, 2004 when
the deeds were recorded; Corpus and Castillo sued the Arriagas prior to the property
transfer; the Arriagas were insolvent at the time of the transfers or became insolvent
as a result of the transfers; and Pete and Delao did not pay reasonably equivalent
value, which should have been determined as of March 17, 2004. 
Fraudulent Transfers
           In their first issue, Corpus and Castillo assert the trial court erred by
determining the property transfers occurred prior to March 17, 2004, the date on which
the deeds to Pete and Delao were recorded. In issues two through nine, Corpus and
Castillo challenge both the legal and factual sufficiency of the evidence supporting the
trial court’s findings that Corpus’s and Castillo’s claim arose after the Arriagas
transferred the properties (issues two and three); Delao and Pete paid a reasonably
equivalent value for the property (issues four and five); the Arriagas were not
insolvent at the time of the transfers (issues six and seven); and the transfers were not
fraudulent under section 24.006(a) of the Texas Business and Commerce Code (issues
eight and nine). Because we determine that the evidence is legally insufficient to
uphold the trial court’s judgment, we do not reach issues three, five, seven, and nine,
challenging factual sufficiency.
           A.     Standard of Review
           In reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the judgment, crediting favorable evidence if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not. City of
Keller v. Wilson, 168 S.W.3d 802, 807, 822 (Tex. 2005). There is legally insufficient
evidence of a vital fact when (a) there is a complete absence of evidence of a vital fact;
(b) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is
no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite
of the vital fact. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).
           B.     Section 24.006(a)
           The purpose of TUFTA is to prevent debtors from defrauding creditors by
placing assets beyond their reach. Tel. Equip. Network, Inc. v. TA/Westchase Place,
Ltd., 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). TUFTA
provides remedies to creditors of debtors who fraudulently transfer assets under
certain circumstances. See Tex. Bus. & Com. Code Ann. §§ 24.005–.006, .008. 
Section 24.006(a) states,
A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor whose claim arose before the transfer was made or the
obligation was incurred if the debtor made the transfer or incurred the
obligation without receiving a reasonably equivalent value in exchange
for the transfer or obligation and the debtor was insolvent at that time or
the debtor became insolvent as a result of the transfer or obligation.
 
Id. § 24.006(a). Therefore, in order to prove that a transfer was fraudulent under
section 24.006(a), Corpus and Castillo must show (1) their claim arose prior to the
property transfers; (2) Delao and Pete did not pay reasonably equivalent value for the
properties; and (3) the Arriagas were insolvent at the time of the transfers or became
insolvent as a result of the transfers.
                     1.      Timing of Transfer
           The first two issues presented by Corpus and Castillo concern the timing of the
transfers. In their first issue, Corpus and Castillo assert the trial court erred by
determining the property transfers occurred prior to March 17, 2004. In their second
issue, they contend the evidence is legally insufficient to show that their claim arose
after the Arriagas transferred the properties.
           Section 24.007 of TUFTA states that a transfer is made
with respect to an asset that is real property . . . when the transfer is so
far perfected that a good faith purchaser of the asset from the debtor
against whom applicable law permits the transfer to be perfected cannot
acquire an interest in the asset that is superior to the interest of the
transferee . . . .
 
Tex. Bus. & Com. Code Ann. § 24.007(1)(A). It appears that no Texas court has
interpreted this section. However, other jurisdictions have interpreted identically
worded statutes to mean that a transfer is made when a deed is recorded. See, e.g., In
re Marlar, 252 B.R. 743, 758–59 (B.A.P. 8th Cir. 2000); In re Cowden, 337 B.R. 512,
523 (Bankr. W.D. Pa. 2006); Boardwalk Regency Corp. v. Burd, 620 A.2d 448, 449
(N.J. Super. Ct. App. Div. 1993); Wilder v. Miller, 17 P.3d 883, 886–87 (Idaho Ct.
App. 2000). We conclude that Texas law supports a similar interpretation.
           The purpose of recording statutes in Texas is to give notice to all persons of the
existence of the instrument. See Ojeda De Toca v. Wise, 748 S.W.2d 449, 450–51
(Tex. 1988) (holding record notice does not preclude fraud claim under Deceptive
Trade Practices Act). The Texas Supreme Court stated,We conclude instead that the purpose of recording statutes is to protect
 
intending purchasers and encumbrancers . . . against the
evils of secret grants and secret liens and the subsequent
frauds attendant upon them. To that end, it is provided that
an innocent purchaser, having no notice of liens or adverse
claims not disclosed by the records in the manner
prescribed by the statute, will hold land as against such
claims and liens. 
 
           The quoted text emphasizes the evil which legislatures across the
country have attempted to remedy through real property recording
statutes: a good faith purchaser should not lose title to real estate when
he has exercised diligence to verify the seller’s ownership. Responding
to these concerns, the Texas Legislature enacted a comprehensive
statutory recording system which provides in part that “[a]n instrument
. . . properly recorded in the proper county is notice to all persons of the
existence of the instrument.” Tex. Prop. Code Ann. § 13.002 (Vernon
1984).
 
Id. (internal citations omitted). 
           Section 13.001 of the Texas Property Code provides that a conveyance of real
property is void as to a subsequent purchaser for value without notice of the
conveyance, unless the instrument of conveyance is recorded. Tex. Prop. Code Ann.
§ 13.001 (Vernon 2004). In accordance with the Texas Property Code’s requirement
that a deed must be recorded, we hold that section 27.007(1)(A) of TUFTA likewise
requires that a deed be recorded to satisfy the requirement that a transfer must be “so
far perfected that a good faith purchaser of the asset from the debtor . . . cannot acquire
an interest in the asset that is superior to the interest of the transferee.” See Tex. Bus.
& Com. Code Ann. § 24.007(1)(A).
           In this case, the trial court impliedly found that the 1994 verbal agreement
between Delao, Pete, and the Arriagas was the actual date of the property transfer.


 
But the deeds to Delao and Pete were not recorded until March 17, 2004. We hold
that, as a matter of law, the property transfers occurred on March 17, 2004. See Tex.
Bus. & Com. Code Ann. § 24.007(1)(A). We sustain Corpus’s and Castillo’s first
issue.
           Section 24.006(a) states that a transfer “is fraudulent as to a creditor whose
claim arose before the transfer was made . . . .” Tex. Bus. & Com. Code Ann. 
§ 24.006(a). Corpus and Castillo won a final judgment against the Arriagas on March
2, 2004. See Corpus v. Arriaga, No. 1999-CV-107,504 (268th Dist. Ct., Fort Bend
County, Tex. Mar. 2, 2004). They filed their petition in that case on January 8, 1999,
which means the claim must have arisen on or before January 8, 1999. We have
already determined that the Arriagas transferred properties to Delao and Pete on
March 17, 2004, more than five years after Corpus’s and Castillo’s claim arose. The
claim of Corpus and Castillo, therefore, arose before the transfers were made. See
Tex. Bus. & Com. Code Ann. § 24.006(a). We sustain Corpus’s and Castillo’s
second issue.
                     2.      Reasonably Equivalent Value
           TUFTA defines “reasonably equivalent value” as “without limitation, a transfer
or obligation that is within the range of values for which the transferor would have
sold the assets in an arm’s length transaction.” Tex. Bus. & Com. Code Ann. §
24.004. “Value is determined as of the date of the transfer.” Mladenka v. Mladenka,
130 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (analyzing
“reasonably equivalent value” in section 24.004) (citing In re Hinsley, 201 F.3d 638,
644 (5th Cir. 2000)).
           At trial, Delao testified that she contributed a total of $8580 toward the
mortgage on the property she received from her parents. She testified that she wrote
a check for $80 every month from 1994 through 2002, though she could not produce
bank records to verify her payments. Evidence introduced at trial showed that Delao’s
property had an appraised value of $16,060 when it was transferred in 2004. Delao
did not attempt to contradict this appraised value, testifying that she received an offer
for $40,000 just three years later.
           Viewing the evidence in the light most favorable to the judgment, and
accepting Delao’s testimony as true, Delao did not give reasonably equivalent value
for the property she received. The property was worth $16,060 at the time of the
transfer, which is what the Arriagas could have expected to receive in an arm’s length
transaction. Taking into account Delao’s past payments toward the mortgage, Delao
paid only $8580. This is approximately half the property’s reasonably equivalent
value at the time of transfer. 
           Pete’s wife, Leticia, testified at trial that she found receipts totalling $36,397.89
toward the mortgage, property improvements, and property taxes on the land Pete
received from the Arriagas. She also testified that Pete paid additional money toward
the property—including $900 toward the initial down payment—but did not have
receipts to evidence the other expenses and could not provide an estimate. Evidence
introduced at trial showed that Pete’s property had an appraised value of $109,490
when it was transferred in 2004. 
           Accepting Leticia’s testimony as true, Pete did not give reasonably equivalent
value for the property he received. The property was worth $109,490 at the time of
the transfer. Taking into account Pete’s down payment, Leticia’s best estimate of
payments Pete made toward the property he received totaled $37,297.89. This is
approximately 1/3 of the property’s reasonably equivalent value at the time of transfer.
           We conclude the evidence is legally insufficient to prove that either Delao or
Pete paid reasonably equivalent value for the properties. We sustain Corpus’s and
Castillo’s fourth issue.
                     3.      Insolvency
           “A debtor is insolvent if the sum of the debtor’s debts is greater than all of the
debtor’s assets at a fair valuation.” Tex. Bus. & Com. Code Ann. § 24.003(a). For
purposes of determining insolvency, a debtor’s homestead is not considered an asset. 
Id. § 24.002(2)(B); see Duran v. Henderson, 71 S.W.3d 833, 842–43 (Tex.
App.—Texarkana 2002, pet. denied).
           It was undisputed that the Arriagas had a judgment against them in the amount
of $128,757.23 plus interest at the time of the property transfers. See Corpus v.
Arriaga, No. 1999-CV-107,504 (268th Dist. Ct., Fort Bend County, Tex. Mar. 2,
2004). Delao’s uncontested testimony at trial was that after the Arriagas transferred
the properties to Delao and Pete, the Arriagas were left with no non-exempt assets
with which to pay the judgment. Furthermore, it was uncontested that the Arriagas
were once again in bankruptcy proceedings at the time of trial. The uncontested
evidence therefore establishes that the Arriagas “became insolvent as a result of the
transfer” of property to Delao and Pete. See Tex. Bus. & Com. Code Ann. 
§ 24.006(a). We conclude the evidence is legally insufficient to support the trial
court’s finding that the Arriagas were not insolvent as a result of the transfers. We
sustain issue six.
           Having sustained issues two, four, and six, we also sustain issue eight,
challenging the legal sufficiency of the trial court’s finding that the transfers were not
fraudulent under section 24.006(a) of TUFTA. Because we have determined that the
property transfers were fraudulent under 24.006(a) of TUFTA, we do not reach issues
10 through 12 asserting that the transfers are additionally fraudulent under section
24.005(a)(1). We render judgment that the real property transfers were fraudulent
under section 24.006(a) of TUFTA.
Execution of the Judgment
           In issue 13, Corpus and Castillo assert the trial court erred by failing to order
that Corpus and Castillo may levy execution on the transferred properties.
           Section 24.008(b) of TUFTA states, “If a creditor has obtained a judgment on
a claim against the debtor, the creditor, if the court so orders, may levy execution on
the asset transferred or its proceeds.” Tex. Bus. & Com. Code Ann. § 24.008(b). 
Because the trial court did not have the opportunity to consider whether to levy
execution, we must remand this matter to the trial court. We sustain issue 13.
Attorney’s Fees
           In issues 14 and 15, Corpus and Castillo assert that the trial court erred by
awarding attorney’s fees to Pete and Delao, and by not awarding attorney’s fees to
Corpus and Castillo.
           Pete and Delao generally requested attorney’s fees in both their original and
amended answers. In their original petition, Corpus and Castillo requested attorney’s
fees pursuant to section 24.013 of TUFTA. See Tex. Bus. & Com. Code Ann. 
§ 24.013 (“In any proceeding under this chapter, the court may award costs and
reasonable attorney’s fees as are equitable and just.”). Having determined that the
property transfers were fraudulent under TUFTA, we remand for the trial court to
award reasonable attorney’s fees as are equitable and just. See id.
Conclusion
           We reverse the judgment of the trial court and render judgment in favor of
appellants, Francisco Corpus and Juana Maria Castillo. We remand for the trial court
to award reasonable attorney’s fees as are equitable and just and to consider whether
to levy execution on the real property. 
 
                                                             Elsa Alcala
                                                             Justice
Panel consists of Justices Jennings, Alcala, and Higley.