**Francisco CORPUS and Juana Maria Castillo, Appellants,**

v.

**Pete ARRIAGA and Jesusa Delao, Appellees.**

No. 01–07–00525–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 28, 2009.

John C. Juravich, Erdos & Juravich, L.L.P., Sugar Land, TX, for Appellant.

Jesusa Delao, Pete Arriaga, Rosenberg, TX, Gary D. Janssen, Janssen & Associates, Sugar Land, TX, for Appellees.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

This is an appeal from a bench trial concerning a fraudulent transfer of real property under The Uniform Fraudulent Transfer Act (TUFTA). *See* TEX. BUS. & COM.CODE ANN. §§ 24.001–.013 (Vernon 2002). Appellants, Francisco Corpus (Corpus) and Juana Maria Castillo (Castillo), appeal from a final judgment in favor of appellees, Pete Arriaga (Pete) and Jesusa Delao (Delao). Corpus and Castillo present 15 issues on appeal challenging the legal and factual sufficiency of the evidence, and asserting the trial court erred by failing to award attorney's fees to Corpus and Castillo and failing to levy execution on the real property. We conclude that the real property transfers were fraudulent under section 24.006(a) of TUFTA. We reverse the judgment of the trial court and render judgment that the real property transfers were fraudulent under section 24.006(a) of TUFTA. We remand for consideration of the request for attorney's fees and the request for levied execution on the real property.

## Background

In 1994, Modesto and Felicita Arriaga (the Arriagas) purchased several properties from Wessendorff Development Company (Wessendorff). The Arriagas executed a promissory note in the amount of $47,409.30 in consideration for purchasing the properties.

The Arriagas then entered into a business agreement with Corpus and Castillo. Corpus and Castillo were to build a dance hall on one of the properties purchased by the Arriagas from Wessendorff. However, disputes arose between the parties, and construction of the dance hall ceased.

In 1999, Corpus and Castillo sued the Arriagas over the failed dance hall. Several months later, the Arriagas filed for bankruptcy, which stayed the lawsuit.

In 2002, the Arriagas sold a portion of the Wessendorff properties. The Arriagas used the proceeds from that sale to satisfy the note to Wessendorff, which released its lien on the properties.[1]

In 2003, the Arriagas voluntarily dismissed their bankruptcy petition, and the lawsuit resumed. *See In re Arriaga,* No.1999–38705–H5–7 (Bankr.S.D.Tex. Sept. 15, 2003). On March 2, 2004, the trial court rendered a final judgment in favor of Corpus and Castillo, awarding them $66,000 in actual damages, prejudgment interest at 10% from May 1, 1997 through March 2, 2004, $16,979 for attorney's fees plus $10,000 if the case was appealed, court costs, and postjudgment interest at 10%. *See Corpus v. Arriaga,* No. 1999–CV–107504, 2004 WL 5622248 (268th Dist. Ct., Fort Bend County, Tex. Mar. 2, 2004). The Arriagas did not appeal. To date, the Arriagas have not made any payments toward satisfying the judgment.

In March 2004, just 15 days after the trial court rendered a final judgment against them, the Arriagas transferred to their children, Pete and Delao, the remaining properties that had been purchased from Wessendorff. The deeds were recorded in Fort Bend County. Upon learning of the transfers, Corpus and Castillo initiated this suit. In their petition, Corpus and Castillo alleged that the property transfers to Pete and Delao were fraudulent under TUFTA. Corpus and Castillo sought remedies under section 24.008 of TUFTA, including the right to levy execution on the transferred properties. They also sought attorney's fees pursuant to section 24.013. Pete and Delao answered with a general denial and requested attorney's fees.

The case proceeded to a bench trial. Delao and Leticia Arriaga, Pete's wife, testified that the Arriagas made an oral agreement in 1994 that the properties belonged jointly to the Arriagas, Pete, and Delao. They also testified that Delao and Pete made monthly payments toward the Wessendorff note from 1994 through 2002, when the Arriagas paid off the note.

The trial court rendered final judgment in favor of Pete and Delao. The trial court awarded Pete and Delao $12,000 in attorney's fees plus $7500 if the case was appealed, costs of court, and postjudgment interest at 6%. The trial court also ordered that the lis pendens filed in Fort Bend County against the transferred properties be dissolved upon the conclusion of the appeals process. The trial court made the following findings of fact and conclusions of law:

---

1. Soon afterward, the Arriagas deeded a portion of the remaining properties to Victor Hugo Barrera and Dora F. Barrera. Corpus and Castillo named the Barreras as well as Pete and Delao in this lawsuit. The trial court rendered an interlocutory default judgment against the Barreras, and they are not parties to this suit.

*Findings of Fact*

1. The Court finds as a matter of fact that there is an agreement entered into between the Defendant family members to contribute funds to the purchase of the subject property, which was adhered to by the Defendants. The agreement was entered into prior to any judgment or claim that the Plaintiff could have made in this case. The Defendants paid their share of the money owed and the amount they paid was equivalent value because the amount they paid was based upon the original purchase price of the property.

2. The Court finds as a matter of fact that there was no intent to hinder, delay or defraud any creditor.

3. The Court finds as a matter of fact that the Defendants were purchasers for value of the subject real property.

4. The Court finds that as a matter of fact, the agreement between the Arriagas and the Defendants pre-existed the transaction entered into by the Arriagas and the Plaintiffs, and that the Arriaga agreement with the Defendants pre-dated the Arriaga agreement with the Plaintiffs by a substantial period of time and therefore there was no intent or belief by the Arriagas at the time they conveyed the property to the Defendants that the Arriagas would be incurring debts that were beyond their ability to pay as they came due, or that their remaining assets were unreasonably small in relation to the transaction they entered into with the Plaintiffs.

5. The Court finds that as a matter of fact, the Arriagas:

 a. did not attempt to conceal the transaction,

 b. did not retain control or possession of the property after the agreement between the Arriagas and the Defendants was entered into,

 c. did not transfer the property after they had been sued by the Plaintiffs, and

 d. did not abscond.

. . . .

*Conclusions of Law*

1. The agreement entered into between the Defendants and the Arriagas is a valid and enforceable agreement.

2. The Arriagas did not intend to defraud, hinder or delay the Plaintiffs.

3. The Arriagas received reasonably equivalent value, if not more, than they were entitled to under the agreement with the Defendants.

4. The Arriagas did not enter into the agreement with the Defendants for the acquisition of the subject property at a time when they intended to, believed, or reasonably should have believed that they would be entering into a subsequent agreement that would make their remaining assets insufficient to satisfy the newly incurred financial obligation.

5. Defendants were purchasers for value of the subject real property. . . .

Corpus and Castillo filed a motion for new trial, which the trial court denied. The motion for new trial asserted that the oral agreement between the Arriagas, Pete, and Delao did not constitute a transfer, which actually occurred on March 17, 2004 when the deeds were recorded; Corpus and Castillo sued the Arriagas prior to the property transfer; the Arriagas were insolvent at the time of the transfers or became insolvent as a result of the transfers; and Pete and Delao did not pay reasonably equivalent value, which should have been determined as of March 17, 2004.

### Fraudulent Transfers

In their first issue, Corpus and Castillo assert the trial court erred by determining the property transfers occurred prior to March 17, 2004, the date on which the deeds to Pete and Delao were recorded. In issues two through nine, Corpus and Castillo challenge both the legal and factual sufficiency of the evidence supporting the trial court's findings that Corpus's and Castillo's claim arose after the Arriagas transferred the properties (issues two and three); Delao and Pete paid a reasonably equivalent value for the property (issues four and five); the Arriagas were not insolvent at the time of the transfers (issues six and seven); and the transfers were not fraudulent under section 24.006(a) of the Texas Business and Commerce Code (issues eight and nine). Because we determine that the evidence is legally insufficient to uphold the trial court's judgment, we do not reach issues three, five, seven, and nine, challenging factual sufficiency.

### A. Standard of Review

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005). There is legally insufficient evidence of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

### B. Section 24.006(a)

 The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,* 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). TUFTA provides remedies to creditors of debtors who fraudulently transfer assets under certain circumstances. *See* Tex. Bus. & Com.Code Ann. §§ 24.005–.006, .008. Section 24.006(a) states,

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 24.006(a). Therefore, in order to prove that a transfer was fraudulent under section 24.006(a), Corpus and Castillo must show (1) their claim arose prior to the property transfers; (2) Delao and Pete did not pay reasonably equivalent value for the properties; and (3) the Arriagas were insolvent at the time of the transfers or became insolvent as a result of the transfers.

#### 1. Timing of Transfer

The first two issues presented by Corpus and Castillo concern the timing of the transfers. In their first issue, Corpus and Castillo assert the trial court erred by determining the property transfers occurred prior to March 17, 2004. In their second issue, they contend the evidence is legally insufficient to show that their claim arose after the Arriagas transferred the properties.

 Section 24.007 of TUFTA states that a transfer is made

with respect to an asset that is real property ... when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee....

TEX. BUS. & COM.CODE ANN. § 24.007(1)(A). It appears that no Texas court has interpreted this section. However, other jurisdictions have interpreted identically worded statutes to mean that a transfer is made when a deed is recorded. *See, e.g., In re Marlar,* 252 B.R. 743, 758–59 (B.A.P. 8th Cir.2000); *In re Cowden,* 337 B.R. 512, 523 (Bankr.W.D.Pa.2006); *Boardwalk Regency Corp. v. Burd,* 262 N.J.Super. 162, 620 A.2d 448, 449 (1993); *Wilder v. Miller,* 135 Idaho 382, 17 P.3d 883, 886–87 (2000). We conclude that Texas law supports a similar interpretation.

▆ The purpose of recording statutes in Texas is to give notice to all persons of the existence of the instrument. *See Ojeda de Toca v. Wise,* 748 S.W.2d 449, 450–51 (Tex.1988) (holding record notice does not preclude fraud claim under Deceptive Trade Practices Act). The Texas Supreme Court stated,

> We conclude instead that the purpose of recording statutes is to protect
>
> > intending purchasers and encumbrancers ... against the evils of secret grants and secret liens and the subsequent frauds attendant upon them. To that end, it is provided that an innocent purchaser, having no notice of liens or adverse claims not disclosed by the records in the manner prescribed by the statute, will

hold land as against such claims and liens.

> The quoted text emphasizes the evil which legislatures across the country have attempted to remedy through real property recording statutes: a good faith purchaser should not lose title to real estate when he has exercised diligence to verify the seller's ownership. Responding to these concerns, the Texas Legislature enacted a comprehensive statutory recording system which provides in part that "[a]n instrument ... properly recorded in the proper county is notice to all persons of the existence of the instrument." TEX. PROP.CODE ANN. § 13.002 (Vernon 1984).

*Id.* (internal citations omitted).

▆ Section 13.001 of the Texas Property Code provides that a conveyance of real property is void as to a subsequent purchaser for value without notice of the conveyance, unless the instrument of conveyance is recorded. TEX. PROP.CODE ANN. § 13.001 (Vernon 2004). In accordance with the Texas Property Code's requirement that a deed must be recorded, we hold that section 27.007(1)(A) of TUFTA likewise requires that a deed be recorded to satisfy the requirement that a transfer must be "so far perfected that a good faith purchaser of the asset from the debtor ... cannot acquire an interest in the asset that is superior to the interest of the transferee." *See* TEX. BUS. & COM.CODE ANN. § 24.007(1)(A).

▆ In this case, the trial court impliedly found that the 1994 verbal agreement between Delao, Pete, and the Arriagas was the actual date of the property transfer.[2] But the deeds to Delao and Pete were not

---

**2.** In its Finding of Fact and Conclusion of Law, the trial court stated, "The Court finds that as a matter of fact, the agreement between the Arriagas and the Defendants pre-existed the transaction entered into by the Arriagas and the Plaintiffs, and that the Arriaga agreement with the Defendants pre-dated the Arriaga agreement with the Plaintiffs by a substantial period of time...."

recorded until March 17, 2004. We hold that, as a matter of law, the property transfers occurred on March 17, 2004. *See* TEX. BUS. & COM.CODE ANN. § 24.007(1)(A). We sustain Corpus's and Castillo's first issue.

Section 24.006(a) states that a transfer "is fraudulent as to a creditor whose claim arose before the transfer was made . . . ." TEX. BUS. & COM.CODE ANN. § 24.006(a). Corpus and Castillo won a final judgment against the Arriagas on March 2, 2004. *See Corpus v. Arriaga*, No. 1999–CV–107504, 2004 WL 5622248 (268th Dist. Ct., Fort Bend County, Tex. Mar. 2, 2004). They filed their petition in that case on January 8, 1999, which means the claim must have arisen on or before January 8, 1999. We have already determined that the Arriagas transferred properties to Delao and Pete on March 17, 2004, more than five years after Corpus's and Castillo's claim arose. The claim of Corpus and Castillo, therefore, arose before the transfers were made. *See* TEX. BUS. & COM.CODE ANN. § 24.006(a). We sustain Corpus's and Castillo's second issue.

### 2. Reasonably Equivalent Value

TUFTA defines "reasonably equivalent value" as "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM.CODE ANN. § 24.004. "Value is determined as of the date of the transfer." *Mladenka v. Mladenka*, 130 S.W.3d 397, 407 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (analyzing "reasonably equivalent value" in section 24.004) (citing *In re Hinsley*, 201 F.3d 638, 644 (5th Cir.2000)).

At trial, Delao testified that she contributed a total of $8580 toward the mortgage on the property she received from her parents. She testified that she wrote a check for $80 every month from 1994 through 2002, though she could not produce bank records to verify her payments. Evidence introduced at trial showed that Delao's property had an appraised value of $16,060 when it was transferred in 2004. Delao did not attempt to contradict this appraised value, testifying that she received an offer for $40,000 just three years later.

Viewing the evidence in the light most favorable to the judgment, and accepting Delao's testimony as true, Delao did not give reasonably equivalent value for the property she received. The property was worth $16,060 at the time of the transfer, which is what the Arriagas could have expected to receive in an arm's length transaction. Taking into account Delao's past payments toward the mortgage, Delao paid only $8580. This is approximately half the property's reasonably equivalent value at the time of transfer.

Pete's wife, Leticia, testified at trial that she found receipts totalling $36,397.89 toward the mortgage, property improvements, and property taxes on the land Pete received from the Arriagas. She also testified that Pete paid additional money toward the property—including $900 toward the initial down payment—but did not have receipts to evidence the other expenses and could not provide an estimate. Evidence introduced at trial showed that Pete's property had an appraised value of $109,490 when it was transferred in 2004.

Accepting Leticia's testimony as true, Pete did not give reasonably equivalent value for the property he received. The property was worth $109,490 at the time of the transfer. Taking into account Pete's down payment, Leticia's best estimate of payments Pete made toward the property he received totaled $37,297.89. This is

approximately 1/3 of the property's reasonably equivalent value at the time of transfer.

We conclude the evidence is legally insufficient to prove that either Delao or Pete paid reasonably equivalent value for the properties. We sustain Corpus's and Castillo's fourth issue.

### 3. Insolvency

 "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." TEX. BUS. & COM.CODE ANN. § 24.003(a). For purposes of determining insolvency, a debtor's homestead is not considered an asset. *Id.* § 24.002(2)(B); *see Duran v. Henderson*, 71 S.W.3d 833, 842–43 (Tex.App.-Texarkana 2002, pet. denied).

 It was undisputed that the Arriagas had a judgment against them in the amount of $128,757.23 plus interest at the time of the property transfers. *See Corpus v. Arriaga*, No. 1999–CV–107504, 2004 WL 5622248 (268th Dist. Ct., Fort Bend County, Tex. Mar. 2, 2004). Delao's uncontested testimony at trial was that after the Arriagas transferred the properties to Delao and Pete, the Arriagas were left with no non-exempt assets with which to pay the judgment. Furthermore, it was uncontested that the Arriagas were once again in bankruptcy proceedings at the time of trial. The uncontested evidence therefore establishes that the Arriagas "became insolvent as a result of the transfer" of property to Delao and Pete. *See* TEX. BUS. & COM.CODE ANN. § 24.006(a). We conclude the evidence is legally insufficient to support the trial court's finding that the Arriagas were not insolvent as a result of the transfers. We sustain issue six.

Having sustained issues two, four, and six, we also sustain issue eight, challenging the legal sufficiency of the trial court's finding that the transfers were not fraudulent under section 24.006(a) of TUFTA. Because we have determined that the property transfers were fraudulent under 24.006(a) of TUFTA, we do not reach issues 10 through 12 asserting that the transfers are additionally fraudulent under section 24.005(a)(1). We render judgment that the real property transfers were fraudulent under section 24.006(a) of TUFTA.

### Execution of the Judgment

In issue 13, Corpus and Castillo assert the trial court erred by failing to order that Corpus and Castillo may levy execution on the transferred properties.

Section 24.008(b) of TUFTA states, "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." TEX. BUS. & COM.CODE ANN. § 24.008(b). Because the trial court did not have the opportunity to consider whether to levy execution, we must remand this matter to the trial court. We sustain issue 13.

### Attorney's Fees

In issues 14 and 15, Corpus and Castillo assert that the trial court erred by awarding attorney's fees to Pete and Delao, and by not awarding attorney's fees to Corpus and Castillo.

Pete and Delao generally requested attorney's fees in both their original and amended answers. In their original petition, Corpus and Castillo requested attorney's fees pursuant to section 24.013 of TUFTA. *See* TEX. BUS. & COM.CODE ANN. § 24.013 ("In any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just."). Having determined that the property transfers were fraudulent under

TUFTA, we remand for the trial court to award reasonable attorney's fees as are equitable and just. *See id.*

### Conclusion

We reverse the judgment of the trial court and render judgment in favor of appellants, Francisco Corpus and Juana Maria Castillo. We remand for the trial court to award reasonable attorney's fees as are equitable and just and to consider whether to levy execution on the real property.